Case number 17-1431, Randy Pearce v. Chrysler Grp LLC Pension Plan. Oral argument not to exceed 10 minutes for plaintiff, 5 minutes for amicus, and 15 minutes for the defendant. Lawrence Breskin for the appellant. You may proceed. Good morning, your honors. I'm Lawrence Breskin. I represent the plaintiff who is the appellant. This is a pension case. The core question in this case is whether an employee can safely rely upon what a pension plan has written in its summary plan description, or whether the damages caused by the pension plan's mistake must be shifted and borne by the innocent victim, the employee, who suffers a loss of his pension benefits or a portion of his pension benefits as the result of the pension plan's mistake. Now the district court, first of all, this court has found that there was a misrepresentation in the summary plan description. This was sent back to determine whether there were any equitable remedies which could cure that misrepresentation. The district court found that equity did not provide any relief in this situation. For reformation, the court found that an honest mistake was not sufficient to show equitable fraud, and that something more, that is, some showing which indicated a detention to deceive was required. You agree that, so, to me this is a hard line. So clearly you don't need an intent to deceive. I think we all agree on that at this point. But you need fraud or inequitable conduct, right? Correct. What is the difference between an honest mistake and fraud or inequitable conduct, and what do we look at? So we know what kind of common law fraud looks like. It seems to me inequitable conduct, you could argue and should argue, is something less than that. But what is it? What it is, is two things. It's a misrepresentation. Do we have to find an affirmative misrepresentation? Because the other side is arguing this is an omission. Correct. But that's a misrepresentation of the rules for receiving benefits. Does it have to be a knowing misrepresentation? No. Even if the misrepresentation is not knowing. But it didn't say, right, to me a misrepresentation, and you correct me where I'm wrong, to me a misrepresentation is you terminated vested person are entitled to 30 and out. That's a misrepresentation. This is an omission. Am I making a mistake there? Is there a distinction? It seems to me there's a distinction between an omission and a misrepresentation. I'm not saying an omission, by the way, couldn't amount to inequitable conduct. I'm just trying to understand what the line is. I think you're looking at misrepresentation too derrily. The misrepresentation is in regard to what could cause a loss of your benefits. By not putting forward the information about what could cause a loss of benefits, the omission is a misrepresentation. It left the participant in this case with an assurance that if he retired within five years . . . No, I understand. The briefs are clear on that. Is there a misrepresentation in the sense of saying to your client from the Chrysler side, go look at the SPD? The SPD tells you the information, and the SPD didn't, in fact, include this item. Correct. Those are details, but the misrepresentation is really what you have to do in order to get the supplemental benefit. The SPD, by its omission, misrepresented what was needed. You have to have a misrepresentation to win. There must be a misrepresentation and there must be a duty, either legal or ethical, to not make a misrepresentation. That's what equitable fraud is. It's the combination of the duty and not living up to that duty. What case does that come from? That comes from both. I'm sorry. It's in the brief. Maybe you can tell me in the reply, in your rebuttal. The reason that it's significant that there was a duty not to make a misrepresentation is because it raises the level of trust that someone has when there's a legal or ethical duty to make an honest representation. For example, when you're buying a car and you read an ad saying, this is a wonderful car, really terrific, you take that with a great assault and understand it may be an exaggeration, but when they say that the car has 72,310 miles, you can trust that because there's a legal obligation to tell people what the odometer reading is. Throughout equity, there are examples of where an obligation to provide accurate information exists. It's the coupling of a misrepresentation with the legal or ethical duty to not make a misrepresentation. That is what this case is based on. You are claiming both equitable estoppel and reformation, is that right? Correct. Do they provide the same remedy, or is there a difference in remedy under the two theories? I've thought about that. I can't think of a scenario in which someone would be eligible for reformation where estoppel would provide something more for them. I think that in this situation, what you're dealing with the summary plan description, they do reach the same results. But I do think that the remedy is available, both remedies are available. Thank you. May it please the court. My name is Eric Shevard, and I represent the Secretary of Labor as amicus curiae in this appeal. As you are well aware, the Secretary's brief is focused on the intent to deceive requirement that was imposed below. I am pleased to hear that the court believes that that was an improper requirement under the law of equity, because the Secretary very much agrees. I would like to address a couple of the questions that you just posed to Mr. Breskin. Regarding an omission as a misrepresentation, the Osberg court at the district court level discussed that at length. I would also suggest that section 102 explicitly talks about omissions as being a violation of section 102. The SPD is required to provide all information that would result in disqualification from benefits, as the case was here. But I would also suggest that the panel, the prior Sixth Circuit panel that looked at this case, determined based on the information before it, which was the administrative record, that there was a material misrepresentation here. So I would suggest that the courts below and this court here, the question is, what must the plaintiff show to obtain reformation? Again, from the Secretary's perspective, whatever it is, it is not an intent to deceive. What is it? Yes, so looking to the treatises on this from the days of the divided bench, as well as courts from that era, or court decisions from that era, what you have is a reasonable mistake, right? The plaintiff must be reasonably mistaken as to the plan terms, and the defendant must engage in equitable fraud or other inequitable conduct. Of course, now what does that mean? Do you think the defendant engaged in equitable fraud here? Your Honor, that's beyond the scope of our brief. Okay, so can you, then let's focus on the second prong. Go ahead, I'm sorry. Sure, well, I would suggest that that is as well, but I think there are cases that can provide some good guidance for this. Connecticut Fire is an excellent example. Now, this case was decided in 1936. That's two years before the merger, the federal court merger of the benches, right? There, you did not have a misrepresentation even. You didn't have intentional deception. You didn't have detrimental reliance. All you had was a reasonable mistake caused by the defendant, and then that the defendant was benefiting from that mistake by enforcing the contract terms as written. So when you say inequitable conduct, and I know you're not trying to address this specific case, but what would you say would constitute inequitable conduct? Well, I would suggest that it's a factor-based test, and I know that courts and law would like a hard and fast rule, but that's not how they would analyze these cases. I think you need to look at, the district court needs to look at factors that support reformation, any mitigating factors that would suggest that perhaps the defendant is being held to an unfair standard. Really, the driver is whether the defendant is benefiting from the mistake, the reasonable mistake that it caused. So can I ask you a question, because this was dealt with on summary and judgment, and it seems to me in the world of reformation, we're talking about discretionary judgments by a district court, because it's a decision at equity. Should a district court then, in the equity area, hold hearings, gather facts, and do a bench trial? I mean, how does this look, in other words? Because what I'm used to is, I guess, what I call the A1 claims and not the reformation claims. And so explain to me how that works. Well, I think that's exactly right. There are facts that need to be determined. Whether a trial is necessary in this case is, of course, a matter for the district court. And I think there were some established material facts below that were undisputed. So I think that some of those could go to providing a decision on summary judgment. Could summary judgment be awarded to the plaintiff? You know, I think that would be within the district court's discretion, yes. But there are facts that have not been addressed by the district court because of the way that it was decided based on this intent to deceive requirement. So, again, what I'd like to know from the district court would be, hey, was Mr. Pierce actually mistaken? And then, two, was that an objectively reasonable mistake? And then, three, was the defendant benefiting from the mistake that they caused? Four, were there any mitigating factors? Don't we know the defendant benefited? I mean, right, they're not paying. So isn't that factor pretty easy? Well, from your perspective, I think that's probably correct. Again, that's beyond the scope of our brief. Hypothetically, then. Hypothetically, yes. Hypothetically, I believe that that has been met, that the defendant is benefiting because they are not paying the 30 and out benefits. So they would be taking it. In that hypothetical situation, they would be taking advantage of a mistake. In general, in a general hypothetical, that factor would almost always be met, then. I'm not sure that's true, Your Honor. Your Honor, I can imagine situations where it's the plan that's benefiting, or where it's the, sorry, where there's a mistake that is unfairly. It could benefit somebody else other than the defendant, is that the? Well, yes, or, I mean, there's a lot of different hypotheticals we could think about where reformation would not be issued for a Section 102 violation, I guess is what I'm trying to get at. And it's not necessarily that, you know, like, just because a plaintiff says they're harmed doesn't mean they're harmed, I guess is what I'm trying to get at. But wouldn't the first two factors get to that? So you have, was the plaintiff actually mistaken? Then the second factor was, I think, objectively, was it okay, right? What was the second factor? Yeah, no, I think when you look at the treaties and when you look at Connecticut Fire, the mistake must be objective, yes. And then what was the fourth factor? I'm sorry. Well, I think any court needs to take a look and see if the defendant did anything to mitigate the harm that was going on. You know, it could be that the person was mistaken, but then the defendant took immediate action to make sure that the mistake was rectified. In this case, and I know you're not answering this case, but in this case, the plan itself had this criterion in it. And my recollection from the record is that the plaintiff asked for a copy of the plan and wasn't given a copy, but was told to look at the SPD. So in that kind of a situation, there's nothing that a plaintiff could do to get the actual language. But what if, hypothetically, the plaintiff was given the plan? Would that make a difference, that this requirement was actually in the plan itself and the plan was given to the plaintiff? Yes, Your Honor. I'm very sorry about this. That's very embarrassing. But yes, Your Honor, I think that – That means your time's up. I'm so sorry. If you would answer my question and then your red light has been on, I'm sorry to say. I'm sorry. Could you please repeat the question? I'm very sorry. Is it important that in this case, the plaintiff – hypothetically, the plaintiff asked for a copy of the plan where the limitation was and was not given a copy of the plan? And was told – I think that would be a factor. And it would matter as to what the timing was when they received the plan, whether the plan was available on the website like the SPD was, and also whether the plan was relatively understandable, which I think in this case it probably was. But we also – I think as you're aware, there's testimony below that says the plan document – from the company saying the plan document was so legalistic that we didn't think it would be a good idea to provide that because it would just create confusion. I thought they said something like it wouldn't – no human would read it. Right. Right. And well, as an ERISA attorney, I take some issue with that. But at the same time, I do – Maybe ERISA attorneys would read it. Okay. Well, thank you. We appreciate your argument. Okay. Thank you very much, Your Honors. Good morning. May it please the Court. William Holtman on behalf of the Chrysler Group Pension Plan. Judge Moore, you asked the Department of Labor attorney a scenario that assumed that Mr. Pierce had asked for a copy of the pension plan itself. That did not happen in this case. In fact, he testified that he did not, that he read the SPD from cover to cover. Mr. Breskin, Mr. Pierce's attorney, is the first person to ask for a copy of the pension plan. Is there any evidence in the record that the plan was offered to the employees to read? I want to be careful in how I answer your question because I don't want to be misleading. In terms of the plan was always available, meaning if the participants asked for it, they would get it. Now, available in terms of was it on the website? No, it was not on the website. Was there anything on the website indicating that a plan existed? Well, the summary plan description itself said that a plan existed, and I was very careful when I took Mr. Pierce's deposition. He was adamant that he read the pension plan from cover to cover, that he read every word in it, and that summary plan description says in it, and I realize this isn't controlling, but if you have any questions or if there are any conflicts, you need to look at the pension plan itself. Mr. Pierce testified that he read that language. Now, I'm not arguing that somehow the pension plan trumps because of that language, but it's certainly a statement in there that lets them know that the pension plan exists. And don't forget, Mr. Pierce's briefs point out this is not an unsavvy person. In the description of his decision and his thought process as to making his retirement decisions, he deeply understood the financial runnings of the company. He was involved in them according to Mr. Pierce. So this isn't an unsophisticated person who has no idea that a pension plan exists, doesn't realize that he's looking at a document. You concede that the district court made legal error, correct, in the standard. There's no intent to deceive. I agree there's no intent to deceive. I'm not sure that the district court actually required that. There was some inartful language in the opinion. My question is since this is a decision at equity and the district court has discretion, why shouldn't we remand for it to consider the factors laid out either in Connecticut Fire or elsewhere? I mean, why isn't that the right result here? Well, because I think the district court did look at those factors. If you look at the magistrate judge's opinion, particularly at page 19 of the magistrate judge's opinion, she says there is no evidence that the plan engaged in fraud or other inequitable conduct. That is a direct quote from the R&R. How do you define inequitable conduct? Because even if we concede fraud, how do you define inequitable conduct? And the definition, I'm sorry to be long in my question, the definition the Department of Labor gave, it seems to me at the very least there's an issue of fact as to whether the plaintiff could meet that. Well, Amara 5 is the only case that I've found that actually defines inequitable conduct, and it defines inequitable conduct as an act or omission that is unconscientious or a violation of good faith. And I submit to you there's nothing that gets to an act or omission that is unconscientious or a violation of good faith. Certainly I'm not in a position to debate that there was a mistake made here. Certainly I've already been in this room and the panel. Let me ask you how this works because you all went on a set administrative record to summary judgment, which is the way ERISA claims ordinarily work. But we're talking about a reformation, right? And so why wouldn't the plaintiff be entitled to some discovery? It seems to me the plaintiff could at least depose people as to how this was put together, why it was put together this way, and find out even under your standard if we were to agree whether the act or omission was deliberate in some way. You're absolutely right, and we did do discovery in this case. You did? The first time around, meaning when – Did you do it post the remand? Yes, we did. We were – the first time around the case was decided on the administrative record. The district court held that there was no inconsistency between the SPD and the pension plan document because the SPD informed Mr. Pierce that he did not need to be actively employed, and that was the basis of the district court's decision was there was no inconsistency because of the word active. When Pierce appealed, the panel disagreed, and they said that the word active did not – shouldn't be used to modify the term employed and that we need to look at these other factors. It held that there was an inconsistency between the SPD and the pension plan. It remanded it to the district court. We did extensive discovery. Pierce took the deposition of the decision makers in this case of the pension plan representatives. In fact, that's where the testimony you're referring to, Mr. Banty, who testified about things not being written for normal human beings to read. I took Mr. Pierce's deposition. There were other depositions taken. There was extensive document discovery. So there was full discovery in this case, and after that discovery there were cross motions for judgment, and that's where we are today. So is this a case where if there are cross motions for summary judgment where it could be proper for summary judgment to be awarded to Pierce? It could be possible, yes, if he had the evidence. Now, the standard for Mr. Pierce to get reformation is clear and convincing evidence. And do we view the evidence in the light most favorable to the non-moving party going both ways? I think that's how that would work, yes. Because summary judgment in the ERISA context is a little weird because you're usually dealing with an administrative record, but then why isn't there, I mean, we all agree the plaintiff was mistaken. I'm just using this four-factor test. It seems objective that if someone says you're not going to read, no human's going to read the plan, it was objectively okay to be mistaken. The defendant seems to benefit, and I'm unclear about the last factor, but it doesn't seem to me the defendant did anything to mitigate the harm other than put the disclaimer in the summary plan description. Well, as your first factor is whether or not the plan benefited, I'm not so certain that that's true. I don't think that there's necessarily any evidence of that. This isn't a situation where you have a company or a person or your wallet or my wallet that the money's coming out of. I mean, these pension funds are sophisticated in how they're operated, meaning it's funded by the company, and by all means, this is not even in the record. But I don't think we can assume that the pension plan itself benefited because there are funding requirements that go up and down, and there's windows that have to be funded, and the company is responsible for funding it. So to say that the pension plan benefited, I don't think is enough. Do we know that it didn't benefit? We don't know one way or the other. Then why doesn't that factor have to go to some sort of trial? I think the first person to bring that factor up just happened right here at this podium. The Department of Labor. I mean, that wasn't argued below. Are you saying it's forfeited? Yes. Let me ask you another question. I'm sorry, and then I'll be quiet. Even though the district court used the improper standard in evaluating this claim? Well, I don't know that the district court used the improper standard. Recall that the magistrate judge said fraud or other inequitable conduct. The district court adopted it. But then used intent to deceive pretty clearly. But he also went on to say couldn't explain how inequitable conduct could be found where he could point to no evidence other than a violation of RISA. All that said, certainly with this panel, we're in a position, or you are all in a position to apply what we all agree is the standard, fraud or other inequitable conduct. And there is no evidence of an act or an omission that was unconscientious or a violation of good faith. I mean, the facts here are simply an inconsistent SPD. And even to that end, the SPD was inconsistent. This court's already held that. But there were words in that SPD that we can't just forget that existed because I wasn't able to convince the panel a couple of years ago. It did say actively employed. He was not actively employed. And as a sophisticated man as Mr. Pierce purports to be, why he didn't think or say to himself, gee, I wonder why they used that word, actively. There's something to be said for that. Well, we can't overturn what the panel said. I understand that completely. The one question that I had that it struck me that the district judge was not applying the proper standard to review a magistrate judge's determination, that the district judge was not really giving de novo review, but rather said, heads you win, tails you lose. Some of the sentences in there were less than artful. But overall, when you read the district court's opinion, as to each of Pierce's objections, he did go beyond those sentences and address the evidence, address the magistrate judge's findings. In fact, as to the standard of reformation, he pointed out, as I already said, that even in terms of inequitable conduct, how can he show inequitable conduct when he can only point to evidence of a violation of arrest? So was the district court's opinion written in an artful way to explain the standard that he was applying? It probably could have been better, but did the district court apply the proper standard? I think they did. When you take a look at the substance of what the district court says, read past some of those sentences that make you think that the district court is doing something that it shouldn't. And then go on to read what it said after that and point out. At some points he was pointing out deficiencies in the objections, but they would always go on to say something substantive about the objection, about the evidence. So where these bring us to as for reformation is, and where I think the district court came out is the same way that the district court came out with the objection is that something more than a mistake is required. And the only two circuits to have addressed reformation in the context of SPD are the ninth and DC circuits, both of which have held that simple inconsistency between the SPD and the pension plan is insufficient. What is that something more? Something more. Something more would be based on Amera five, unconscientious or violation of good faith. That would be the something more. And something more is also evident from the cases that Mr. Pierce cites here. Those cases involved additional affirmative acts to either persuade the participant or to hide the true facts from them. There's no evidence in this record that anyone attempted to persuade Mr. Pierce or that anyone attempted to hide anything from him. He admits, Pierce admits that prior to his retirement, no representative of the pension plan made any representations to him whatsoever regarding his eligibility for early retirement supplement. Did he ask anyone about. He said that he spoke with no one at the company. The only person he spoke with about his retirement was his wife. That was Mr. Pierce's testimony. As to Pierce's estoppel plan, Pierce argues that he need only establish the traditional elements of estoppel and that this court's opinion of Blomaker is inapplicable to SBD cases. He doesn't have support for that, but beyond that, I suggest that the court's already eliminated that argument less than two years ago in Donati v. Ford Motor Company where it reaffirmed that estoppel cannot be applied to vary the terms of unambiguous plan documents. The only exception is the standard set out in Blomaker, which is the traditional elements and three additional ones. Here, there's no question that the pension plan itself is unambiguous. This court's already held that it is because it's clear that he's not entitled to 30 and up benefits. To prevail on estoppel, Pierce has to approve traditional estoppel plus three elements. He can't do so. Pierce doesn't have evidence of the second element of traditional estoppel, which is awareness of the true facts, which this court's interpreted to mean that it contains an element of fraud, which is either intended deception or such gross negligence as to amount to constructive fraud. Those cases that, excuse me, I think we all agree there's no evidence of intended fraud here, but in terms of gross negligence, those cases that have found gross negligence amounting to constructive fraud involve facts that aren't present here. All of them, in each case the plaintiff was given personal repeated assurances about their benefit. We don't have that here. Again, Pierce admitted he talked to no one about his pension plan except for his wife. As for the other Blomaker elements, plan provisions that do not allow the participants to determine eligibility, that's not present here. Pierce would have known he's not eligible here just by reading the plan, so that element he does make, and extraordinary circumstances. There's no evidence of extraordinary circumstances. Thank you very much. Thank you. Judge, first of all, the citation I was trying to remember is Guy versus Lexington Fayette, which is a Sixth Circuit case, 657 Fed App 217, where the court said, constructive fraud is a breach of a legal duty or equitable duty, which in spite of the fact that there is no moral guilt resulting from the breach of the duty, the law declares fraudulent because of the tendency to deceive others, violate public or private confidence, or injure the public interest. In regard to your questions regarding whether Pierce ever asked for the plan, what is clear is that when he was first told that he was not going to get the supplement, his immediate response, not my response, but his, was show me where in the documents you've given me it says what you say. And in response to that, while he didn't ask specifically, give me the plan, he said, give me the documents where it says this. They gave him a copy of the SPD. They did not give him a copy of the plan. That was post-denial though, right? It was post-denial, yes. And the key is before when he makes his decision not to take the buyout. And at that point he didn't ask for the plan. He had not asked, but it also shows that as of that point in time, he was not in his mind thinking in terms of the plan as something different than the SPD because he didn't say, give me the plan. He asked for the document, where in the document you've given me, the SPD. So if the SPD says, go look at the plan if you have any questions, and he doesn't attempt to get the plan, don't you have difficulty here? I don't think so. I think that goes to the reasonableness of his reliance upon the misrepresentation. If he actually knew the plan and he had reviewed the plan, it wouldn't be reasonable. If he seemed to be unaware that the plan existed, and equity is capable of looking at whether it was reliant. He was aware the plan existed. It said so in the summary. It does say in the introduction to the summary that there is a plan. So, again, that goes to the reasonableness, right? Right. Correct. Now, in his argument, Mr. Altman said that the two cases disagree and say that a mistake is insufficient. That's not correct. In Skinner, the Ninth Circuit case, the court said that a contract may be reformed, and it denied relief because the parties agreed that the plaintiffs had not shown any, did not, that they provided no evidence that Northrop Grubbett had materially misled the employees. Even if it had misled the employees, they concede that they did not rely upon misleading information. I mean, there, just like here in the Ninth Circuit case, the summary plan description, there was a conflict between that and the plan itself, and they said that alone is not enough to show fraudulent inducement. Correct? They rested on the fact that the participants admitted that they did not rely upon the misleading information. There were other comments, but they did not hold that if you don't have an intent to deceive that, or if you don't have something more than an honest mistake, we're not going to grant relief. All your opponents saying, and it's true, that both the Ninth Circuit and D.C. Circuit said the simple fact that something was omitted from the summary plan description that plaintiffs rely upon is not enough to show fraudulent inducement. Well . . . Correct? No, I don't agree with that reading of either of those cases. All right. Unfortunately, your red light is on, and so we will certainly look at the case ourselves, and appreciate your argument. Thank you all for your argument. The case will be submitted.